The opinion of the Court was delivered by
Glover, J.
After argument in the Court of Appeals, these cases were ordered to the Court of Errors.
The defendant, Wright Sullivan, a freedman, was convicted of highway robbery at Laurens, Fall Term, 1866, and the other defendants, also freedmen, were convicted of burglary at Darlington, Fall Term, 1866, and moved in arrest of judgment on the ground that, under the laws and Constitution, exclusive jurisdiction of the offences of which the defendants were convicted is conferred on the District Courts.
The Court of General Sessions in South Carolina is a superior Court of general jurisdiction, possessing all the powers exercised by the Court of Queen’s Bench in England, where it has been held, without question, that nothing shall be intended to be without the jurisdiction of a superior Court but that which specially appears to be so; and nothing shall be intended to be within the jurisdiction of an inferior Court but that which is expressly alleged. (Peacock vs. Bell, 1 Saun. Rep. 74; Winford vs. Powell, 2 Lord Raym. 1310.) By the Act of 1789, our Circuit Courts have original and final jurisdiction, *283 and Judge Johnson, in the case of The State vs. Helfried, (2 N. & McC. 233,) says, the Court of Common Pleas and General Sessions possesses unlimited jurisdiction over all questions arising on either side. Every citizen is answerable to them, and; in territorial extent, their jurisdiction is bounded only by the limits of the State; and the same doctrine is held in the late case of The State vs. Walker, (ante, 36,) decided in the Court of Appeals, December, 1866. The Court of General Sessions then manifestly has jurisdiction over the offences charged in these indictments, and of the persons charged, unless by the express negative words of some statute, or by irresistible implication, it is taken away. The first section of article III. of the Constitution of 1865 having directed that District Courts should be established, which “ shall have jurisdiction of all criminal cases wherein the accused is a person of color,” it is argued, that the implication is clear that the jurisdiction of the District Courts over persons of color was intended by the Constitution to be exclusive. In reply to this argument it might be conclusive, that it is not, as has been shown, by implication but by express averment that inferior Courts exercise exclusive jurisdiction; and authority is ample to show that the words, “ all criminal cases,” by negation do not deprive the superior Courts of jurisdiction. “ The Court of King’s Bench hath so sovereign a jurisdiction in all criminal matters that an Act of Parliament, appointing that all crimes of a certain denomination shall be tried before certain Judges, doth not exclude the jurisdiction of this Court without express negative words; and, therefore, it hath been resolved, that 33 Henry VIII., c. 12, which enacts that all treasons, &c., within the King’s House shall be determined before the Lord Steward of the King’s House, &c., doth not restrain this Court from, proceeding against such offences.” (2 Bac. Abr. 690: title, Court of K. B., A. 1.) And in the case of The State vs. Walker, referred to above, the general rule is said to be, “ that an Act of the Legislature shall not be construed to oust them (the *284 Superior Courts) of jurisdiction, except by express provision or necessary implication.” The Act of 1865 (13 Stat. 278) does, however, confer exclusive jurisdiction on the District Courts in all criminal cases, wherein the accused is a person of color, in express terms; but this Act was repealed by the Act of September, 1866, (13 Stat. 387,) except the first and second sections, and exclusive jurisdiction is given to the District Courts only in cases of larceny, misdemeanor, &c.
Before the passage of the latter Act, the offences, of which the defendants were convicted, had been committed, and it is contended that they could be tried only by the District Court which then had exclusive jurisdiction of “all criminal cases wherein the accused is a person of color.”. The District Courts were not organized until October, 1866, when they no longer had exclusive jurisdiction over persons of color charged with capital felonies; and unless the jurisdiction of the Court of Sessions was revived, there was no tribunal competent to try such persons. It is clear that if there was no inferior Court exercising the exclusive power to try persons of color, the trial will be had in the Court of General Sessions, because nothing shall be intended to be out of. that jurisdiction but what specially appears to be so. But it is insisted, that if the District Courts had not jurisdiction, then the jurisdiction of .the Court of magistrate and freeholders, which had exclusive jurisdiction over slaves and free persons of color, was a recognized tribunal, and was not abolished so far as free persons of color were criminally amenable. It is not necessary to review the legislation creating tribunals for the trial of this class of persons. The Act of 1740 (7 Stat. 397) is the first •that provides for the trial of free persons of color. It directs that all crimes and offences committed by free negroes shall be tried by two justices and not less than three freeholders. The Act of 1839 (11 Stat. 13) provides, that all offences committed by a slave or free person of color shall be tried before a magistrate and five freeholders. It is conceded that slaves *285 and free persons of color were tried exclusively in the Courts created by these Acts; but are there any words which by express negation or irresistible implication take away the jurisdiction of the superior Courts ? It has been shown that the words, “ all crimes and offences,” cannot, by intendment, be construed to confer exclusive jurisdiction on an inferior Court, and there are no words in the Act of 1839 which clearly express such intention. In October, 1866, a Court of magistrate and freeholders could exercise neither exclusive nor concurrent jurisdiction over slaves and free persons of color. Before the adoption of the Constitution of 1865, the institution of slavery had been abolished by the authorities of the United States, and the eleventh section of ninth article of the Constitution recognizing this abolition declares “that slavery shall never be re-established in this State.” Contemporaneously, the Convention adopted an ordinance whereby it was ordained “ that all laws, resolutions, orders, or rules, which recognize the existence of slavery and regulate the relations of master and! slave, and define and enforce the rights and duties growing' thereout, or create or punish offences against such rights or against the public policy of the State in reference to slavery, have become of no further or future force or effect, by reason of the extinction of slavery.” As 'the Court of magistrate and freeholders, organized for the trial of slaves and free per- * sons of color, is a part of that code which Recognized the existence of slavery and which created and punished offences against the public policy of the State in reference to slavery, it is consequently abolished by the terms of the ordinance. And this forum being part of the slave code, and its jurisdiction over free persons of color being an incident of it, it necessarily follows, that having been abolished as to slaves, it can no longer exercise jurisdiction over free persons of color. When these defendants were- tried, there was no tribunal, save the Court of Sessions, possessing either exclusive or concurrent jurisdiction over this class of persons charged with capital *286 crimes. But it was argued, “that the creation of a tribunal to try, after the offence is committed, is an ex-post facto law, to the same extent as the passage of an Act punishing past offences.” It has been expressly held that a statute creating a new Court, or conferring a new jurisdiction, or enlarging or diminishing the powers of an existing Court, is not an ex-post facto law. Wales vs. Belcher, 3 Pick. 508; Commonwealth vs. Phillips, 11 Pick. 28.
A majority of this Court is of opinion that the trial of the defendants was properly had before the Court of General Sessions, and that they can take nothing by their motion.
Dunkin, C. J., Wardlaw, A. J., Carroll, C., Inglis, A. J., and Aldrich, J., concurred.
Moses, J., Lesesne and Johnson, C. C., dissented.
Motions dismissed.